**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF RHODE ISLAND**

---

In re:  Ryan J. Calise,                                                    BK No: 12-12948
      Debtor                                                                    Chapter 7

---

Justin Taylor,                                                              A.P. No. 12-01052
      Plaintiff
v.
Ryan Calise,
      Defendant

---

## **DECISION**

      This is an action brought by the Plaintiff Justin Taylor seeking a declaration that the debt he is owed by the Debtor Ryan Calise in connection with his purchase from Calise of a Yamaha motorcycle for $4,000 is nondischargeable. Taylor alleges that at the time of the transaction he was not given the title to the motorcycle because Calise represented that he needed the money from the sale to pay off a loan on the motorcycle and that once he did he would deliver the title to Taylor. This representation, Taylor maintains, was false. Calise denies that he promised he would deliver the title to Taylor. Rather, he asserts that he told him he did not have the title because the previous owner had never given it to him, and that Taylor would have to obtain the title from the previous owner or from Yamaha. Several weeks later and still without the title, Taylor contacted the police to run a check on the vehicle identification number. The police informed him that the motorcycle was not owned by Calise and had been reported stolen. Unfortunately for Taylor, the police took possession of the motorcycle and it was never returned to him. Nor was his $4,000. Taylor sued Calise in state court and obtained a $10,925 default

1

judgment against him. Calise filed a Chapter 7 bankruptcy petition in this Court, precipitating the filing of this adversary proceeding. Throughout the pendency of this action Taylor has been represented by counsel and Calise has proceeded pro se.

The Court held a non-jury trial on April 17, 2014, and this decision constitutes my findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052. After careful review of the testimony and trial exhibits, and based upon my evaluation of the credibility of the witnesses, I conclude that Calise's debt to Taylor is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). I do not, however, find that the debt is also nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

## Jurisdiction

The Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157(a) and 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## Burden of Proof

As the party seeking a determination that Calise's debt to him is excepted from discharge under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(4), Taylor bears the burden of proving his claims by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991); *deBenedictis v. Brady-Zell (In re Brady-Zell)*, No. 13-9014, 2014 WL 2872224 at *2 (1st Cir. June 25, 2014); *Palmacci v. Umpierrez*, 121 F.3d 781, 786-87 (1st Cir. 1997). "Exceptions to discharge are narrowly construed in furtherance of the Bankruptcy Code's 'fresh start' policy, and, for that reason, the claimant must show that his claim comes squarely within an exception enumerated in Bankruptcy Code § 523(a)." *Palmacci*, 121 F.3d at 786-87 (citations omitted).

2

**Background and Stipulated Facts**[1]

In January of 2009, Taylor, who lived in Massachusetts, contacted Calise regarding his Craigslist posting of the motorcycle for sale. Subsequently, he met Calise at his home in Rhode Island to inspect the motorcycle. (AP Doc. #61 ¶¶ 1-4). It was at that visit that Taylor purchased the motorcycle for $4,000, paying cash, and the parties memorialized the transaction with a bill of sale containing the notation "sold as is." (AP Doc. #61 ¶¶ 5, 14; Exh. A). At the time of the sale, Calise did not have in his possession or deliver to Taylor the title to the motorcycle. In fact Calise never obtained the title. (AP Doc. #61 ¶¶ 6, 13). After the passage of several weeks and without the delivery of the title, Taylor contacted the Leicester, Massachusetts police department requesting they conduct a search of the motorcycle's vehicle identification number (the "VIN check"). Presumably based on this search, the police informed Taylor that the motorcycle was not owned by Calise and had been reported as stolen. (AP Doc. #61 ¶¶ 7, 8). Taylor then sued Calise in state court and obtained a default judgment against him in the amount of $10,925. (AP Doc. #61 ¶¶ 9, 11).

---

[1] Taylor's counsel, after having difficulty communicating with Calise, submitted a one-sided "Joint Pre-Trial Order" on February 28, 2014, which contained a 14-paragraph statement of "facts which are admitted and require no proof." *See* AP Doc. #61. I held a pretrial conference on March 13, 2014, after which I entered an order requiring Calise to file a statement "listing the facts from the Plaintiff's pretrial statement with which the Defendant disagrees." *See* AP Doc. #66. Calise filed such a statement on March 21, 2014, taking issue only with paragraphs 10 and 12 of Taylor's statement of admitted facts. *See* AP Doc. #69. Therefore, I take as stipulated the facts stated in paragraphs 1 through 9, 11, 13, and 14 of Taylor's statement of admitted facts. In addition, at trial Taylor introduced Exhibit A (the bill of sale), Exhibit B (a Leicester Police Department incident report), and Exhibit C (a Cranston Police Department incident report), which were admitted as full exhibits with no objection from Calise. Those exhibits will be referred to herein as Exh. A, Exh. B and Exh. C. Finally, a transcript of the trial can be found at AP Doc. #70, and an audio recording of the trial can be found at AP Doc. ##72 and 73.

Calise filed his Chapter 7 petition on September 10, 2012, and on Schedule F ("Creditors Holding Unsecured Nonpriority Claims") he listed as disputed Taylor's $10,925 claim. (BK Doc. #1). Taylor initiated this adversary proceeding on December 6, 2012, and in his Complaint Objecting to Discharge alleged that Calise's debt to him was nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(4). (AP Doc. #1 ¶¶ 19, 20).

## **Findings of Fact Not Stipulated by the Parties**

The following are my additional findings of fact upon which the parties have not agreed. While I base my findings on the entirety of the testimony and other evidence presented at trial, I highlight here only the evidence most central to my decision.

At trial Taylor presented four witnesses, including Calise as a hostile witness. First, Taylor testified that after seeing the advertisement for the motorcycle on Craigslist he called Calise and they discussed the motorcycle and the sale offer (AP Doc. #70 at 13-14). When Taylor called Calise back a couple of days later to say he would like to see the motorcycle, Calise mentioned that he did not have the title. (AP Doc. #70 at 14). Taylor testified: "I said, all right, well, I don't think I'm going to come down then. He said, no, no, come down, he said, you see my house, you meet my parents, you'll know, I'll pay the title off, I'll get you the title. You're not going to get ripped off." (AP Doc. #70 at 14). Taylor testified further: "I continually asked him, said you're going to pay the title off and send it to me as soon as possible, I want to register the bike and be able to ride it? He said, yes. I just need to pay off my loan." (AP Doc. #70 at 14-15). As previously indicated, the Leicester Police Department advised Taylor that Calise was not listed as the owner of the motorcycle and it had been reported stolen. (AP Doc. #70 at 16). I note that the bill of sale is dated January 27, 2009, and the Leicester Police report

4

states that Taylor called about the VIN check on March 16, 2009, so it appears to have been several weeks after the sale that Taylor called the police. (Exh. A; Exh. B). The police report, however, recites that Taylor stated "he was having difficulty obtaining a title" from Calise, which is consistent with the testimony Taylor gave at trial. (Exh. B). Finally, Taylor testified that no portion of the state court judgment against Calise had been paid to him. (AP Doc. #70 at 17). On cross-examination Taylor was asked why, if he was told as part of the sale transaction that Calise had to obtain the title after paying off a loan against the motorcycle, this fact was not reflected in the bill of sale. Taylor responded it "probably should have been." (AP Doc. #70 at 17).

      I find Taylor to have been a most credible witness, and his testimony was fully supported by the testimony of two other witnesses he presented. His wife Kim Taylor testified that she accompanied her husband to Calise's house when he purchased the motorcycle. (AP Doc. #70 at 20). She stated that she heard her husband ask Calise about the title and he responded that once Taylor paid him for the motorcycle he would pay off the loan and send Taylor the title. (AP Doc. #70 at 21). Taylor's other witness was his friend Brendon Giggey, who also accompanied Taylor and his wife to Calise's house at the time of the sale. Giggey testified that he was present during a conversation in which Taylor told Calise he was nervous about not getting the title. In response Calise specifically told Taylor that he (Calise) had to pay off the loan in order to be able to get the title to Taylor. (AP Doc. #70 at 23-25). I similarly find the testimony of both Mrs. Taylor and Giggey consistent with that of Taylor, credible, and an accurate and truthful recitation of the facts that induced Taylor to proceed with the purchase of the motorcycle.

Lastly, Taylor called Calise to the stand. Calise testified that he purchased the motorcycle from a Mr. Douangsavanh (also referred to as Mr. D at trial), who advised him at the time that he did not have the title to the motorcycle because he owed $1,500 on a loan against the motorcycle. Calise testified that Mr. D said he would deliver the title after paying off that loan. (AP Doc. #70 at 28, 29). There was some evidence at trial – in the police reports, in testimony by Taylor, and in testimony elicited from Calise by Taylor's counsel – suggesting that the motorcycle may have been stolen, rather than purchased from Mr. D. But this evidence was not definitive. Conversely, it is possible that Mr. D scammed Calise by selling him the motorcycle without the title and then tried to cover his tracks by filing a police report that the motorcycle had been stolen. I do not find the slim evidence on this point persuasive to conclude that Calise stole the motorcycle. Rather, I find credible Calise's testimony (supported by the testimony of Mr. DiFillippo detailed below) that he obtained the motorcycle from Mr. D in exchange for cash and a Kawasaki four-wheeler. (Exh. B; Exh. C; AP Doc. # 70 at 16, 43, 45, 64-66).

Calise further testified that at the time he sold the motorcycle to Taylor, even though he had not been able to contact or obtain the title from Mr. D despite several attempts, he thought Mr. D's loan was paid off and that Taylor could obtain the title directly from Yamaha. (AP Doc. #70 at 44-45). However, Calise also admitted that he never had any evidence that Mr. D's $1,500 loan balance was paid off, nor did he contact Yamaha in an attempt to clear the title or ascertain if it could be obtained directly from Yamaha. (AP Doc. #70 at 45). In fact, during a pre-trial deposition, Calise explained that his contact with Mr. D after his purchase of the motorcycle was limited: "I left him two or three voicemails and I started texting him. Then I started getting fishy about the thing." (AP Doc. #70 at 46). He continued: "Basically, Justin [Taylor] did the same

6

thing I did. I bought a bike without a title, just like Justin did. Just like I was told I would be getting a title, which is why I said the same thing." (AP Doc. #70 at 47). Finally, Calise admitted that he never received the title from Mr. D and that he did not give the title to Taylor. (AP Doc. #70 at 47).

In his defense, Calise called three witnesses. The first was his friend Chris DiFillippo, who was present with Calise when he purchased the motorcycle in exchange for the four-wheeler and cash. He confirmed that Mr. D told Calise that he (Mr. D) had to pay off a loan against the title. (AP Doc. #70 at 49). He also testified that he was with Calise during the transaction with Taylor and that at that time Calise never "guaranteed" delivery of the title to Taylor. (AP Doc. #70 at 50). This was the sole testimony provided by Mr. DiFillippo.

Calise's second witness was his mother, Deborah Calise. She testified that she was served with a "lawsuit summons" for the state court action that Taylor brought against Calise. (AP Doc. #70 at 56). On cross-examination, Mrs. Calise testified to additional details about that service. She said that two constables, a male and a female, approached her about a lawsuit filed against her son, and that the female constable gave her documents. (AP Doc. #70 at 59-60). Mrs. Calise advised them that her son was not at home. She confirmed that the female constable's affidavit filed in the state court action stated Mrs. Calise had told them that she would not accept service of the summons and complaint on behalf of her son, so that constable dropped the papers at her feet. But Mrs. Calise denied that she then threw the paperwork out into the driveway, as stated in the affidavit. (AP Doc. #70 at 60-61). Instead, Mrs. Calise testified, she took the papers even though her lawyer told her to tell the constable that the case had nothing to do with her. (AP Doc. #70 at 61).

As his final witness, Calise took the stand in his own defense. He testified that when he sold the motorcycle, Taylor "was clearly informed that he [Calise] did not have title to the motorcycle." (AP Doc. #70 at 65). Further, he "clearly explained that the previous owner, Mr. D needed the cash to clear the title during the previous sale and the plaintiff would have to obtain the title from Yamaha directly or the previous owner and not from him [Calise]." (AP Doc. #70 at 65). According to Calise, Taylor agreed to those terms and completed the transaction. Moreover, Calise stated, the fact that he made copies of the bill of sale with a copy of his driver's license "to ensure a transparent transaction" proved that he had the intent of the transaction being "valid and mutual." (AP Doc. #70 at 65). Calise also testified that he told Taylor he would try to get in contact with Mr. D, and that in fact he tried unsuccessfully to do so. (AP Doc. #70 at 66). Calise then described his post-sale contact with Taylor as follows. "From the start, if he [Taylor] approached me in a non-violent threatening [sic] manner I would have been able to take care of the situation, but seeing that his attitude towards me, I decided to stop talking to Mr. Taylor and only deal with the police because I felt it was the safest thing to do from there . . . ." (AP Doc. #70 at 66-67).

Taylor presented two witnesses in rebuttal to this testimony, himself and Giggey. Both testified that they had never heard anything from Calise about a "Mr. D" at the time of the sale. (AP Doc. #70 at 68-69, 70-71). They also testified that Calise had informed them the bank had the title, "not a Mr. D." (AP Doc. #70 at 69, 71).

I have taken into consideration the testimony of all of the witnesses, including their demeanors and whether their testimony offered a reasonable and credible account of events and was or was not supported by other testimony or evidence. To reiterate, I find the testimony of

8

Taylor, his wife, and Giggey entirely credible on the issue of whether Calise represented to Taylor that he would use the money from the sale to pay off his loan and that after doing so he would deliver the title to the motorcycle to Taylor. I adopt their version of what Calise represented to Taylor and find that this representation was made by Calise and that it was false and misleading when made. There was no evidence presented at trial suggesting that Calise needed to pay off a loan, from a bank or otherwise, and would thereafter be able to deliver the title to Taylor. The substantial evidence, including Calise's own testimony, establishes that Calise never received the title from his seller, and hence, he could not possibly have required Taylor's money to pay off his own loan to obtain the title and deliver it to Taylor.

## Conclusions of Law

Taylor alleges that Calise's debt to him is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(4). The following are my conclusions of law.

A.    Taylor's nondischargeability claim under § 523(a)(2)(A)

To prove his claim under § 523(a)(2)(A), Taylor must show that Calise's debt is one for money obtained by "false pretenses, a false representation, or actual fraud." To establish that, Taylor must prove by a preponderance of the evidence that: (1) Calise made a knowingly false representation or one made in reckless disregard of the truth; (2) Calise intended to deceive; (3) Calise intended to induce Taylor to rely upon the false statement; (4) Taylor actually relied upon the misrepresentation; (5) Taylor's reliance was justifiable; and (6) Taylor's reliance on the false statement caused damage. *See In re Brady-Zell*, 2014 WL 2872224 at *2; *McCrory v. Spigel (In re Spigel)*, 260 F.3d 27, 32 (1st Cir. 2001); *Palmacci*, 121 F.3d at 786.

Addressing each of these elements, I conclude that Calise made a knowingly false

9

representation when he told Taylor that he would use the money from the sale to pay off a loan and provide the title to Taylor. This false representation was made by Calise with intent to deceive. Calise was aware of Taylor's uneasiness with closing on the sale without the title in hand, and disclosing to Taylor the truth – that Calise had not heard from or been able to obtain the title from Mr. D for several months – surely would have seriously jeopardized the sale. It follows that Calise intended to induce Taylor to rely upon the false statement after he previously indicated to Calise his reluctance to buy the motorcycle without having assurance of prompt receipt of the title from Calise so he could register, insure, and use the motorcycle. As intended, Taylor relied on the misrepresentation, and his wife testified that he would not have paid $4,000 for a motorcycle for which he would not receive the title. Finally, Taylor's reliance on Calise's false representation was justifiable. It was reasonable, if ultimately ill-fated, for Taylor to accept Calise at his word after he offered Taylor several assurances that he would obtain the title for him as soon as he paid off the loan against the motorcycle using Taylor's funds. Even Calise described his seeming "transparency" upon which Taylor based his trust by having Taylor come to his home to meet him and his parents, and in attaching a copy of his driver's license to the bill of sale. Taylor's reliance on the false statement caused him damage; he paid Calise $4,000 which absent the misrepresentation he would not have done, and ended up without the motorcycle.

  Taylor has proven by a preponderance of the evidence each element of his claim under § 523(a)(2)(A) that the debt owed him by Calise is nondischargeable.

B. <u>Taylor's nondischargeability claim under § 523(a)(4)</u>

  To prove his claim under § 523(a)(4), Taylor must show that the debt arises out of "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Taylor alleges

that Calise's actions constitute larceny as set forth in R.I. Gen. Laws § 11-41-1. To establish larceny under this state statute, Taylor must prove the following by a preponderance of the evidence: (1) he gave Calise money; (2) Calise knowingly received and carried away the money; and (3) Calise, at the time he received the money, intended to wrongfully and permanently deprive Taylor of the money. *See In re Timothy*, 442 A.2d 887, 890 (R.I. 1982); *State v. Hector*, 402 A.2d 595, 596 (R.I. 1979). Additionally, for purposes of § 523(a)(4), the larceny requires "taking and carrying away another's property" with "wrongful" or "felonious" intent. *Bullock v. BankChampaign, N.A.*, 133 S.Ct. 1754, 1759-60 (2013).

      Here, Taylor has failed to prove by a preponderance of the evidence that at the time of the sale Calise intended to "wrongfully and permanently deprive" Taylor of the $4,000 he paid for the motorcycle. Despite the misrepresentation he made to Taylor about having to pay off a loan to obtain the title, Calise did make some post-sale efforts in this regard, albeit unsuccessfully. His unrebutted testimony is that he tried to contact Mr. D after he closed on the sale to Taylor. While his efforts were limited, his testimony suggests he might have continued with such attempts but for his perception that Taylor was harassing or threatening him. Even if Calise suspected that something was "fishy" with Mr. D, or that Taylor might not be able to obtain clear title directly from Yamaha, this does not equate to "wrongful" or "felonious" intent to permanently deprive Taylor of his money and leave him with a motorcycle that could not be registered. I find based on the evidence that Calise in fact attempted to contact and obtain the title from Mr. D after he sold the motorcycle to Taylor, and that Taylor has not proven that Calise intended at the time of the sale to "wrongfully and permanently deprive" Taylor of the money he paid for the motorcycle. Therefore, his claim pursuant to § 523(a)(4) fails.

**Amount of the Nondischargeable Debt**

While I have determined that Calise's debt to Taylor is nondischargeable under § 523(a)(2)(A), based on the evidence presented at trial I cannot ascertain the final amount of that nondischargeable debt. Clearly, the debt is at least $4,000, the amount Taylor paid Calise for the motorcycle. Taylor also is entitled to accrued interest on that principal sum. However, Calise challenged the propriety of the service of process in the state court action from the outset of this adversary proceeding, and, despite notice of this disputed issue, Taylor did not prove by a preponderance of the evidence that the service of process in the state court proceeding was effective to confer personal jurisdiction over Taylor in that action. Consequently, the default judgment Taylor obtained against Calise does not have preclusive effect in this proceeding. *See Vázquez-Robles v. CommoLoCo, Inc.*, No. 13-1384, 2014 WL 2915905 at *3 (1st Cir. June 27, 2014) ("[A] judgment rendered in the absence of personal jurisdiction is a nullity."). Calise submitted unrebutted evidence through his own testimony and that of his mother that, at the time the constables served the state court summons and complaint, he was residing in Florida attending school. Taylor presented no evidence to establish that service on Calise at his parents' home satisfied the applicable state court requirements.

On the other hand, Calise did not make it clear in his "Joint Pre-Trial Order" (AP Doc. #69) that he was disputing the amount of the nondischargeable debt. This became evident, however, during the trial. (Even I expressed some surprise at trial that his challenge to the service of process also included a challenge to the debt amount.) In light of his proceeding pro se, I will afford Calise the benefit of the doubt and deem his challenge of the default judgment to be broad enough to include a challenge to the amount of Taylor's claim. In fairness to Taylor, I will not

12

preclude him from having a full and fair opportunity to prove the amount of the nondischargeable debt in excess of the principal sum of $4,000 and the components of his claim that are included in the state court default judgment.

Therefore, the Court will hold an evidentiary hearing to provide the parties an opportunity to establish the amount of the nondischargeable debt.[2] In advance of that hearing, the parties shall each submit a list of their respective witnesses and pre-marked copies of any exhibits they intend to present at the hearing.

## **Conclusion**

Calise's debt to Taylor is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) in the amount of at least $4,000. The Court will enter a separate order establishing a deadline for the filing of the witness lists and copies of the exhibits and the date of the supplemental evidentiary hearing to determine the amount of the nondischargeable debt.

Dated: July 9, 2014                                     By the Court,

                                                        *Diane Finkle*
                                                        _____
                                                        Diane Finkle
                                                        U.S. Bankruptcy Judge

---

[2] Of course, the parties are free to stipulate to the amount of the nondischargeable debt and forego the hearing.